59 F.3d 176
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 Ralph RENNA, Plaintiff-Appellant,
v.
ALLSTATE INSURANCE COMPANY, DOES 1-20, Defendant-Appellee.
 No. 93-17301.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 13, 1995.
Decided June 21, 1995.
 
 Before: SCHROEDER, BEEZER and THOMPSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 OVERVIEW
 
 2
 Ralph Renna appeals the district court's summary judgment for Allstate Insurance Company in Renna's diversity action for breach of contract, breach of the implied covenant of good faith and fair dealing, and negligence, arising out of a dispute over coverage for costs of earthquake repairs to Renna's home. We affirm.
 
 FACTS
 
 3
 Renna's home, located in Saratoga, California, was damaged October 17, 1989 by an earthquake. He submitted a claim under his homeowner's insurance policy to Allstate Insurance Company (Allstate). Under the terms of the policy, he was entitled to the actual cash value of the loss up to the policy limit. However, if he completed repairs of the damaged property within 180 days of Allstate's last cash value payment, he would be entitled to reimbursement of his total cost to repair the home, even if that cost exceeded the policy limit. Allstate paid the policy limit of $959,200 in March 1991. It is undisputed that Renna never completed the repairs within 180 days after the last cash value payment.
 
 
 4
 The district court granted Allstate's motion for summary judgment and later denied Renna's motion for reconsideration. This appeal followed.
 
 DISCUSSION
 A. Breach of Contract Claim
 
 5
 Renna contends Allstate breached his insurance contract by failing to pay him the actual replacement cost of his home. A condition precedent to payment of the actual replacement cost, in excess of the policy limit, was that Renna had to make all repairs to his home within 180 days of Allstate's last cash value payment. Renna contends this condition precedent was excused under the doctrine of "impossibility," because he did not have the money to make the repairs within the 180-day period.[1]
 
 
 6
 Under California law, "[t]he defense of impracticality (or impossibility) of performance is a matter of law to be decided by the trial court," and one which Renna bore the burden of proving. Monroe v. Oakland Unified Sch. Dist., 114 Cal. App. 3d 804, 813 (1981).
 
 
 7
 In support of his impossibility contention, Renna offered only his own naked assertion of penury.[2] He did not present any evidence that it was impossible or impracticable to obtain construction funding from other sources. See McCalden v. California Library Ass'n, 955 F.2d 1214, 1219 (9th Cir. 1990) ("A party invoking the impossibility defense must show that he used reasonable efforts to surmount the obstacles which prevented performance.") (citing Oosten v. Hay Haulers Dairy Employees & Helpers Union, 45 Cal. 2d 784, 789 (1955)), cert. denied, 504 U.S. 957 (1992).
 
 
 8
 Nor did he establish that his situation involved more than "[m]ere difficulty, or unusual or unexpected expense." Glens Falls Indem. Co. v. Perscallo, 96 Cal. App. 2d 799, 802 (1950); see also Schmeltzer v. Gregory, 266 Cal. App. 2d 420, 424 (1968) ("It is elemental that a person may not escape a voluntary assumed contractual obligation merely because performance would be more expensive than contemplated unless it arises to the point of impossibility."). Allstate paid Renna $959,200, which was the policy limit according to the terms of the policy as adjusted following the earthquake damage to the home. Notwithstanding the receipt of this money, Renna only produced $87,000 worth of receipts for alleged repairs to the house. The district court commented that this circumstance rendered Renna's financial impossibility argument "implausible." See California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987) ("[I]f the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial."), cert. denied, 484 U.S. 1006 (1988).
 
 
 9
 Moreover, in its order denying reconsideration, the district court pointed out that any dispute as to Renna's financial ability to make the repairs was irrelevant, because the policy specifically provided that if the insured (Renna) wanted to recover the full cost of repairing the home, he had to make the necessary repairs within the specified 180-day time period. This policy provision made it reasonably foreseeable that the policy limit might not be enough to cover all costs of repair, and to the extent it did not, that any excess would be Renna's financial obligation. Because this circumstance was reasonably foreseeable, "there can be no commercial frustration of [the] contract." Glens Falls, 96 Cal. App. 2d at 802.
 
 
 10
 Because Renna failed to present "specific facts" showing that there was a material issue to be tried on his breach of contract claim, the district court did not err in granting summary judgment on this claim in favor of Allstate. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).[3]
 
 B. Negligence Claim
 
 11
 Renna contends that Allstate violated its duty of care by not advising him to obtain a higher coverage limit on his home. The question whether a duty exists is decided by the court as a matter of law. Ahern v. Dillenback, 1 Cal. App. 4th 36, 42-43 (1991).
 
 
 12
 Under California law, insurance agents do not owe their insureds a duty to establish and maintain adequate policy limits. See, e.g., Jones v. Grewe, 189 Cal. App. 3d 950 (1987); Schultz Steel Co. v. Rowan-Wilson, Inc., 187 Cal. App. 3d 513 (1986). Notwithstanding that Renna told the agent he wanted "adequate" coverage, and the agent actually toured the property before writing the policy, Allstate did not have an independent duty to advise Renna regarding the adequacy of his policy limits. See Jones, 189 Cal. App. 3d at 956-57; Schultz, 187 Cal. App. 3d at 523-25.
 
 
 13
 Moreover, there was no evidence that Renna made, or that Allstate responded to, any inquiries concerning the adequacy of his limits sufficient to create a special duty on Allstate's part. Compare Free v. Republic Ins. Co., 8 Cal. App. 4th 1726, 1729 (1992) (departing from general rule that agent owes no duty to insured regarding coverage limits, when plaintiff for ten years annually contacted his agent to determine adequacy of his coverage, and policy contained no home replacement cost guarantee).
 
 
 14
 Renna attempts to minimize controlling California case law by drawing a distinction between liability and homeowner's insurance. Such a distinction has been implicitly rejected by the California courts, and we therefore reject it as well. See Free, 8 Cal. App. 4th at 1729.
 
 
 15
 Renna also argues that because Allstate "maintained complete control over policy limits," Allstate owed a special, independent duty of care to ensure that he carried adequate insurance. We reject this argument.
 
 
 16
 It is undisputed that Renna told the Allstate agent it had recently cost approximately $800,000 to build his house. This was the amount of the initial policy limit accepted by both Renna and Allstate. The importance of this is the premium Renna was required to pay was computed with reference to the policy limit. By accepting the $800,000 limit as 100% of replacement cost of the house, and paying a premium on that amount, Renna was entitled to recover the full cost of replacement of the house regardless of the policy limit. All he had to do to avail himself of this privilege was pay the cost of repairs within 180 days of Allstate's last cash value payment.
 
 
 17
 Allstate did not maintain complete control over the policy limit. Renna had the right under the policy "to increase the limit of liability [for dwelling protection coverage] at any time." He never exercised this right, despite receiving annual policy declarations listing the coverage amounts. Even when the coverage amounts were erroneously set lower, which resulted in reduced premiums, he accepted the reduced policy limit amounts and paid the reduced premiums without objection.[4]
 
 
 18
 The district court did not err in granting summary judgment in favor of Allstate.
 
 
 19
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 At oral argument, Renna for the first time contended the 180-day repair clause in the Allstate policy was unconscionable and therefore should not be enforced. Because none of the exceptions "to our general rule that an issue may not be raised for the first time on appeal" exist, we decline to consider the issue. See United States v. Carlson, 900 F.2d 1346, 1349-50 (9th Cir. 1990)
 
 
 [2]
 Q: With regard to the exterior repairs, then why is it that no repairs have been done?
 A: I haven't got the money. If they would pay all that it would take to do it, then it would have got done.
 
 
 [3]
 Renna does not dispute that his claim for breach of the implied covenant relates to Allstate's failure to pay contract benefits. As such, the former claim is nothing more than an "attempt to recover on the policy," Abari v. State Farm Fire & Casualty Co., 205 Cal. App. 3d 530, 536 (1988) (emphasis in original), which cannot lie independently of the breach of contract claim. See Prieto v. State Farm Fire & Casualty Co., 225 Cal. App. 3d 1188, 1195-96 (1990)
 
 
 [4]
 Renna claims he asked for, and was denied, an increase in policy coverage. He made this request, however, after the earthquake, and did so because he wanted to obtain a retroactive increase in the policy limit. Allstate did increase the policy limit after the earthquake, but only to the extent required to set the policy limit to the correct limit